CHEHARDY, Chief Judge.
This is an appeal from a summary judgment granted in favor of defendant Dairy-land Insurance Company and against plaintiff, Charveliar C. Gaudin,[1] in a suit arising from a collision between an automobile and a horse. The sole issue on appeal is whether a horse can be included within the meaning of “motor vehicle” under the uninsured/underinsured motorist provision of the automobile liability policy issued by defendant to plaintiff.
Plaintiff was operating his automobile in a southbound direction in Convent, Louisiana, when his vehicle was struck by a riderless horse. Plaintiff thereafter filed suit against the owner of the animal, Pat LeBlanc, and his own uninsured motorist carrier, Dairyland Insurance Company.
Dairyland subsequently filed a motion for summary judgment. In that motion, it was argued that the policy does not provide coverage since the insured was not injured by the operator or owner of an uninsured motor vehicle. After a hearing on the motion, the trial court determined that a horse was not a motor vehicle within the meaning of the policy and granted the motion for summary judgment.
Louisiana’s uninsured/underinsured motorist statute, LSA-R.S. 22:1406, requires all automotive liability insurers to provide coverage to its insureds for damages caused by the owner or operator of an uninsured/underinsured motor vehicle (unless specifically waived by the insured). *233 The statute does not define the term “motor vehicle,” and plaintiff contends the meaning of the term should be extended to include injuries caused by a collision with a horse. Plaintiff argues that the purpose of the statute is to protect the insured from the carelessness of individuals using the public roads and that LSA-R.S. 22:6, by analogy, shows a legislative intent not to restrict this protection to motorized vehicles, as it includes horses within the definition of vehicle.
R.S. 22:6, titled “Kinds of Insurance,” states, “Insurance shall be classified as follows” and lists 14 classifications of insurance. Among them is the following:
“(3) Vehicle. Insurance against loss or damage to any land vehicle or aircraft or any draft or riding animal or to property while contained therein or thereon or being loaded or unloaded therein or therefrom, and against any loss or liability resulting from or incident to ownership, maintenance, or use of any such vehicle or aircraft or animal.
“Insurance against accidental death or accidental injury to individuals including the named insured while in, entering, alighting from, adjusting, repairing, cranking, or caused by being struck by a vehicle, aircraft, or draft or riding animal, if such insurance is issued as part of insurance on the vehicle, aircraft, or draft or riding animal, shall be deemed to be vehicle insurance.”
As can be seen by reading the statute, the inclusion of horses is simply an illustration of one type of vehicle insurance which may be issued in Louisiana. Neither it, nor the comments to R.S. 22:6, indicate the statute is designed to do anything more than list and define the kinds of insurance permitted in this State. Thus, coverage under any of those policies necessarily depends upon the terms and conditions of the policy in question, as long as those are not otherwise against public policy. Consequently, we find no support in R.S. 22:6 for including a horse within the meaning of motor vehicle.
The policy issued by defendant herein uses the words “motor vehicle,” as does R.S. 22:1406, in its uninsured/underinsured motorist provision, and defines the term as follows:
“A motor vehicle is a land motor vehicle designed for use on public roads. It includes cars and trailers. It also includes any other land motor vehicle while used on public roads.”
The issue of whether a horse can be construed as a “motor vehicle” has been addressed previously by the courts in McDaniel v. Moore, 351 So.2d 855 (La.App. 2 Cir.1977), and Lege v. Romero, 435 So.2d 1152 (La.App. 3 Cir.1983). Under nearly identical facts the two appellate courts in those cases refused to extend the meaning of the term to include horses.
While recognizing the caselaw does not support his position on this issue, plaintiff seeks to distinguish McDaniel and Lege. He asserts that in those cases the horses involved were roaming free when the accidents occurred. In this case plaintiff contends the horse was being used as a mode of .transportation immediately prior to the accident, although, it “threw” its rider (defendant Pat LeBlanc) before colliding with plaintiffs vehicle. That fact, plaintiff argues, differentiates the cases.
In interpreting insurance contracts, the courts are required to give legal effect to the policy provisions according to the true intent of the parties. Hebert v. First American Ins. Co., 461 So.2d 1141 (La. App. 5 Cir.1984), writ denied, 462 So.2d 1265 (La.1985). Such intent must be determined in light of the policy provisions when they are clear and unambiguous, and when they do not lead to absurd consequences. Hebert v. First American Ins. Co., id. In addition, the words of an insurance policy are to be understood in their common and usual significance. Glass Services Unlimited v. Modular Quarters, 478 So.2d 1005 (La.App. 3 Cir.1985).
Webster’s Third New International Dictionary (unabridged 1976), defines motor vehicle as “an automotive vehicle not operated on rails; esp: one with rubber tires for use on highways.” A horse does not conform to this definition of motor vehicle, to the common-sense meaning of the terms *234 or to the definition of motor vehicle provided in the policy issued to plaintiff by defendant. Thus, we agree with the decisions in McDaniel and Lege, and conclude the policy provides no coverage for the injuries plaintiff sustained in the collision with Pat LeBlanc’s horse.
Consequently, we find the trial judge properly granted Dairyland Insurance Company’s motion for summary judgment.
Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by plaintiff-appellant.
AFFIRMED.

. Also referred to as Chaneliar C. Gaudin in the record.